```
                    IN THE UNITED STATES DISTRICT COURT

                         FOR THE DISTRICT OF OREGON


QINGDAO FREE TRADE ZONE GENIUS )
INT'L TRADING CO., LTD., a     )
foreign corporation,           )    No.  08-1292-HU
                               )
              Plaintiff,       )
                               )
     v.                        )    OPINION AND
                               )
P and S INTERNATIONAL, INC.,   )    ORDER
an Oregon corporation,         )
                               )
              Defendant.       )
                               )
```

Travis W. Hall
Bateman Seidel Miner Blomgren, Chellis & Graham
888 S.W. Fifth Avenue, Suite 1250
Portland, Oregon 97204
    Attorney for plaintiff

M. Christie Helmer
Michelle E. Barton
Miller Nash
111 S.W. Fifth Avenue, Suite 3400
Portland, Oregon 97204
    Attorneys for defendant

HUBEL, Magistrate Judge:

   This is a petition by a Chinese company, Qingdao Free Trade Zone Genius Int'l Trading Co. (Qingdao), to enforce an arbitral

OPINION AND ORDER Page 1

1  award handed down in China against P and S International, Inc. (P
2  & S), an Oregon lumber and wood products trading company. Paul
3  Lewis is one of the two principals in P & S and serves as its
4  President and Treasurer. The other principal is Lewis's wife,
5  Sungyi Kang, a Korean. P & S is in the wood products and lumber
6  trading business, buying and reselling wood products. The matter
7  before the court is P & S's motion for summary judgment.

8      In late 2005 and early 2006, P & S sold a shipment of
9  eucalyptus chips through a broker located in Shanghai, to Shandong
10 Asia Pacific SSYMB Pulp & Paper Co. (SSYMB) SSYMB is situated in
11 the north of China, and the chips were delivered to the port of
12 Qingdao. SSYMB did not pay for the chips, and P & S was involved in
13 an ongoing dispute with SSYMB. Lewis Declaration ¶ 3. P & S
14 contacted plaintiff Qingdao to broker the sale of wood chips to a
15 substitute purchaser. Id. at ¶¶ 3, 4. Qingdao arranged for a sale
16 of the chips to Shandong Chenming Paper Holdings Ltd. (Chenming).
17 In addition, Qingdao introduced P & S to its lawyer and assisted P
18 & S in initiating a proceeding in China to recover from SSYMB. Id.
19 at ¶ 4.

20     Qingdao and P & S entered into a sales contract on April 28,
21 2006. Petition, Exhibit 1. The sales contract is less than a page
22 long, written in English, and provides, in part:

23     Any dispute arising from the execution of, or in
    connection with, this Sales Contract should be settled
24     through negotiation. In case no settlement can be
    reached, the case shall then be submitted to Qingdao
25     Arbitration Commission for arbitration according to the
    Commission's Rules of Arbitration. The award rendered by
26
  ///
27
28 Opinion and Order page 2

> the Commission shall be the final and binding [sic] upon both parties.

Id.

Under the sales contract, Qingdao was to purchase the cargo of 3,000 "bone dry" metric tons (BDMT) of eucalyptus wood chips from P & S, for the sum of $150,000, with the ultimate purchaser being Chenming. Chenming was to confirm the actual weight and quality of the cargo when it arrived. When the cargo arrived in port, Qingdao advanced charges and fees related to the cargo, including sea transportation fee, container repairing charge, delayed customs declaration charge, storage charges, and handling charges, in the amount of $44,911.88. Chenming refused the cargo, on the grounds that it was underweight and had too high a moisture content. After Chenming rejected the cargo, Qingdao and P & S had a dispute about what was owed each party: P & S demanded $150,000 for the cargo from Qingdao and Qingdao demanded reimbursement of the $44,911.88 for shipping and customs charges.

Qingdao submitted a claim to arbitration in China for the $44,911.88, plus interest. The parties dispute whether Qingdao ever told P & S it contemplated initiating an arbitration. Lewis states in a declaration that P & S was not so informed. Lewis Declaration ¶ 8. However, Qingdao proffers two emails from Li Chenzhong of Qingdao, addressed to Paul Lewis and dated September 2, 2006 and September 22, 2006, respectively. Both emails are in English. The earlier email says:

> You should understand that your company signed the contract on 28th of April with our company which showing [sic] that your company agreed to accept Chenming's

Opinion and Order page 3

>     inspection result. No body force you to do it. We suggest you and we should go to Qingdao Arbitration Commission for arbitration. The commission will give us a fair adjudication. We have to do it. We must do it, if you do not pay us the money which we firstly paid instead of your company.

Hall Declaration ¶¶ 3, 4, Exhibits 2, 3. P & S moves to strike this evidence on the ground that the statements in the Hall Declaration are not made by a witness with knowledge because Hall is Qingdao's attorney.

Qingdao filed a petition with the arbitration commission on or about December 6, 2006. Hall Declaration, ¶ 2, Exhibit 1, p. 9. The commission mailed a group of documents to P & S, two in Chinese and two in English. The English documents were pamphlets, one titled "Qingdao Arbitration Commission Arbitration Rules," and the other a list of arbitrators. The sales contract between P & S and Qingdao was not included in the mailing, and none of the documents contained Qingdao's name in English. Lewis states in his declaration that he thought the papers related to the dispute with SSYMB that was "being handled by the lawyer acting for us in China." Id. at ¶ 8. There is no indication of when Lewis received the documents, but it was apparently after December 6, 2006, and before February 13, 2007.

The commission appointed an arbitrator on February 13, 2007. Hall Declaration ¶ 2, Exhibit 1. P & S did not make an appearance. On June 14, 2007, the arbitrator made findings and awarded Qingdao $57,473.26. Id. On April 22, 2008, after Qingdao was unable to enforce the judgment in China because P & S had no property there, Qingdao sent a copy of the arbitation award and an English

Opinion and Order page 4

translation by certified mail to P & S. P & S has not paid the amount awarded.

P & S moves for summary judgment in its favor, asserting that the arbitration award is unenforceable because P & S was not notified of the arbitration in English and therefore did not receive due process.

**Standard**

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 (the New York Convention), provides that "[a] court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. The party opposing confirmation bears the burden of proving that one of the seven defenses under the New York Convention applies. See, e.g., Imperial Ethiopian Gov't v. Baruch-Foster Corp., 535 F.2d 334, 336 (5th Cir. 1976); First State Ins. Co. v. Banco de Seguros del Estado, 254 F.3d 354, (1st Cir. 2001); Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 90(2d Cir. 2005). The burden is a heavy one, and the showing required to avoid summary confirmance of the award is high. Encyclopaedia Universalis, 403 F.3d at 90. Judicial review is "very limited," to avoid undermining the twin goals of arbitration: settling disputes efficiently and avoiding long and expensive litigation. Id.

The New York Convention provides that enforcement will be denied when

Opinion and Order page 5

> [t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case.

Id. at Art. V(1)(b). P & S asserts that enforcement should be denied in this case because it was not given proper notice of the arbitration proceedings.

## Discussion

P & S relies significantly on <u>Iran Aircraft Indus. v. AVCO Corp.</u>, 980 F.2d 141 (2d Cir. 1992), a case in which a party relied on a representation by an arbitrator that summaries of invoices could be submitted, and then lost the case (before different arbitrators) because of a lack of proof, i.e., the invoices. The court held:

> the defense provided for in Article V(1)(b) essentially sanctions the application of the forum state's standards of due process [and] due process rights are entitled to full force under the Convention as defenses to enforcement. Under our law, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. Accordingly, if Avco was denied the opportunity to be heard in a meaningful time or in a meaningful manner, enforcement of the Award should be refused pursuant to Article V(1)(b).

980 F.2d at 145 (internal quotations and citations omitted).

P & S argues that in order to comply with due process standards, notice must be "reasonably calculated, under all the circumstances, to apprise interested persons of the pendency of the action and afford them an opportunity to present their objections," <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950) so that failure to provide a translation in a language understood by a defendant "may, in some instances, constitute a

Opinion and Order page 6

denial of due process," Vazquez v. Sund Emba AB, 152 AD2d 389, 499, 548 NYS2d 728 (1989). P & S relies most directly on a California state case, Julen v. Larson, 25 Cal. App.3d 325, 101 Cal. Rptr. 796 (1972), in which the court affirmed the entry of summary judgment for defendant and refused to enforce a Swiss court's judgment on the ground that the service of Swiss process, in German, did not give defendant sufficient notice of the pending Swiss action, so that the Swiss court never acquired personal jurisdiction over the defendant.

In Julen, the court found no evidence that the defendant acquired knowledge in fact of the action pending against him in Switzerland. The evidence showed that the defendant did not understand German, and the accompanying correspondence did not identify the documents as materials of legal significance. The court concluded,

> While we do not require documents in a foreign language to be translated into English in order to be validly served, we think at a minimum a defendant should be informed in the language of the jurisdiction in which he is served ... that a legal action of a specific nature is pending against him at a particular time and place. Normally this information should include the location of the pending action, the amount involved, the date defendant is required to respond, and the possible consequences of his failure to respond. ... We emphasize that no great amount of formality is required for effective notice.

P & S argues that the situation in this case is analogous to that in Julen, and that this court should reach the same result.

Qingdao responds that 1) P & S agreed in the sales contract to settle any dispute through the Qingdao Arbitration Commission; 2) the sales contract also stated that an arbitration would be

Opinion and Order page 7

conducted according to the Qingdao Arbitration Commission's Rules of Arbitration; 3) P & S received an English copy of the Qingdao Arbitration Commission Arbitration Rules and an English copy of the list of arbitrators; 4) Rule 67 of the Commission Arbitration Rules states that the "Chinese language is the working language of the Arbitration Commission," so that by signing the contract P & S consented to notice in Chinese;[1] 5) P & S was aware of a dispute with Qingdao arising from the Chenming inspection; 6) P & S was not paid under the terms of the contract with Qingdao; and 7) P & S had a prior and ongoing legal dispute in China with SSYMB. Qingdao asserts that these circumstances show that P & S received notice reasonably calculated to inform it that the arbitration proceeding had been commenced.

While these circumstances could lead to the inference that P & S knew it had agreed to arbitrate disputes with Qingdao in China, and had reason to suspect that arbitration proceedings in China might be brought against P & S by Qingdao or SSYMB, they do not generate an inference that P & S had actual knowledge that Qingdao had commenced an arbitration proceeding, to take place on a particular date in a particular place. Nor does the contract P & S contain a provision under which P & S agreed to service of process in Chinese.

There is no dispute that the arbitration rules set out in English did not state that arbitration was pending against P & S at

---

[1] The contract between Qingdao and P & S contains no express provision under which P & S agreed to service of process or any other notification in Chinese.

Opinion and Order page 8

a particular time and place. The arbitration rules, however, do state:

> The Arbitration Commission shall, within 10 days as from the date of taking cognizance of a case, serve an Arbitration Rules and a Panel of Arbitrators to the Claimant, and one copy of the Application for Arbitration, the Arbitration Rules and the Panel of Arbitrators to the Respondent.
>
> The Respondent shall, within 15 days from the date of receipt of the Application for Arbitration, submit his written defense to the Arbitration Commission. The Arbitration Commission shall, within 5 days from the date of receipt of the written defense, serve the copy of the written defense to the Claimant.

Lewis Declaration Exhibit B, Article 13. The English documents do not state that cognizance has been taken of a case, and do not name Qingdao or P & S, the amount involved in the dispute, and do not provide a date from which the time lines set out in Article 13 may be calculated.

The Chinese documents contain the name and address of P & S in English, as well as some Arabic numbers and what appear to be dates embedded among Chinese characters. The most significant are 44911.88 (without a dollar sign), which is the amount claimed by Qingdao as reimbursement, see id. at p. 3, 4, 15, 18, and what appears to be a date and time: 2007, 4, 4, 9:30. Id. at p. 10. They also contain, in English, the phone number, fax number, and address of the Qingdao Arbitration Commission.

I conclude that the documents and circumstances of this case-- regardless of whether the emails from Li Chenzhong to Paul Lewis are considered or not--do not demonstrate that P & S received notice reasonably calculated, under all the circumstances, to

Opinion and Order page 9

apprise them of the pendency of the arbitration and afford them an opportunity to be heard.

### Conclusion

Defendant's motion for summary judgment (doc. # 5) is GRANTED. Defendant's motion to strike portions of the Hall Declaration (doc. # 26) is DENIED as moot.

IT IS SO ORDERED.

Dated this 16th day of September, 2009.

/s/ Dennis James Hubel

Dennis James Hubel
United States Magistrate Judge

OPINION AND ORDER Page 10